## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

```
DAVON R. HAYES,              :    CIVIL NO. 3:11-CV-1739
                            :
           Plaintiff        :    (Judge Caputo)
                            :
           v.               :    (Magistrate Judge Smyser)
                            :
JEROME W. WALSH, ET AL.      :
                            :
           Defendants       :
```

## REPORT AND RECOMMENDATION

        Pending before the court is the defendants' motion to dismiss the amended complaint.  We recommend that the motion be granted in part and denied in part.

I.   Background and Procedural History.

        On September 19, 2011, the plaintiff filed, *pro se*, a complaint alleging violations under 42 U.S.C. § 1983.  He was granted leave to proceed *in forma pauperis*.

        On November 14, 2011, the plaintiff filed an amended complaint.  The fifty-one page amended complaint names twenty-three defendants and contains numerous claims about the conditions of his confinement at SCI-Dallas.  The factual

allegations are separated into eight factual parts with 209 sub-paragraphs.

The following individuals are the defendants: 1) Jerome Walsh, the Superintendent of SCI-Dallas; 2) Lawrence Mahally, a deputy superintendent; 3) Norm Demming, a deputy superintendent; 4) Gary Gordon, a major; 5) Kathy Brittian, a classifications program manager; 6) Joseph Zakaruskas, a major; 7) Bart Josefowicz, a unit manager; 8) Mark Pall, an intelligence captain; 9) Charles McKeown, a hearing examiner; 10) Robert MacIntyre, the Chief Hearing Examiner; 11) Dorina Varner, the Chief Grievance Officer; 12) David Mosier, a lieutenant; 13) John Bleich, a lieutenant; 14) Donald Buck, a sergeant; 15) C. Santoro, a corrections officer; 16) John Headman, a corrections officer; 17) K.T. Amos, a corrections officer; 18) K. Fitzgerald, a corrections officer; 19) E.R. Whitman, a corrections officer; 20) R. Young, a corrections officer; 21) Shannon Pieczynski, a nurse; 22) Joseph Hogan, a corrections officer; and 23) James Barnacle, a director.

The plaintiff alleges the following facts in his amended complaint.

        <u>Events Prior to April 4, 2011</u>.


     In December of 2010, defendant Pieczynski issued the
plaintiff a misconduct report falsely charging him with
masturbating in front of her.  This misconduct followed and was
in retaliation for a grievance that the plaintiff had filed
against defendant Pieczynski.  Defendant Pieczynski has a pattern
of filing misconducts against the plaintiff after he files a
grievance against her.


     Defendant McKeown found the plaintiff guilty and sanctioned
him with 180 days in the Restricted Housing Unit (RHU).  The
misconduct was remanded to defendant McKeown for a rehearing.
Defendant McKeown did not allow the plaintiff to call witnesses
at the rehearing even though there was no security reason for
such.  After the plaintiff challenged defendant McKeown's review
of the video, he was removed from the hearing allegedly for being
disruptive.  Defendant McKeown found him guilty.  He did not
provide the plaintiff with an adequate written statement of the
evidence relied upon and the reasons for the disciplinary action.
On appeal, defendants Demming, Zakarauskas, Josefowicz, Walsh,
and MacIntyre also failed to provide the plaintiff with an
adequate statement of the evidence relied upon to find him

guilty, and they failed to set forth a penological security reason for the denial of his witnesses.

In January of 2011, defendant Headman assaulted the plaintiff, and defendant Santoro threatened his life.

In February of 2011, defendant Hogan issued the plaintiff a misconduct report charging him with masturbating in front of defendant Pieczynski.  Defendant Pieczynski was a witness as to the report.  This misconduct followed and was in retaliation for grievances and private criminal complaints the plaintiff had filed against defendants Hogan and Pieczynski.

Defendant McKeown found the plaintiff guilty and sanctioned him with 360 days in the RHU.  Defendant McKeown refused, without a penological reason, to allow the plaintiff to call witnesses, and he failed to provide an adequate statement of the evidence relied upon and the reasons for the disciplinary action taken. On appeal, defendants Demming, Walsh, and MacIntyre also failed to provide the plaintiff with an adequate statement of the evidence relied upon to find him guilty, and they failed to set forth a penological security reason for the denial of his witnesses.

4

The plaintiff filed private criminal complaints with the Luzerne County District Attorney's Office against defendants Buck, Mosier, Headman, and others for assault, terroristic threats and other crimes.  Those complaints were referred back to the security office at SCI-Dallas.  Defendant Pall, the Security Intelligence Captain, denied those complaints without adequately investigating them.  He did not interview the plaintiff or his witnesses, and he accepted the word of his coworker's.

The plaintiff also filed numerous request slips, grievances, and private criminal complaints stating that he feared for his life because the guards and nurses in the RHU had made threats against his life.  His requests for separations from certain staff members were denied.  Defendants Gordon, Mahally, Demming, Brittian, Zakarauskas, Josefowicz, Pall, Barnacle, and Walsh knew that the plaintiff was having serious problems with staff members and that he feared for his life.  They, nevertheless, took no action.

Events of April 4, 2011.

On April 4, 2011, after the plaintiff objected to a search
of another prisoner's cell, defendant Buck told the plaintiff
that he will search his cell.  He ordered the plaintiff to strip.
When the plaintiff refused, he radioed for officers to come to
the plaintiff's cell, strip search him, and tear up his cell.
Four or five officers responded.  The plaintiff still refused to
comply.  Defendants Santoro, Fitzgerald, and Young told the
plaintiff that they could not wait for this day and that he had
brought this on himself.

Defendant Bleich then came to the plaintiff's cell and
questioned him about his refusal to submit to a strip search and
a cell search.  In response to questions from the plaintiff,
defendant Bleich said that he had not ordered the search, that he
did not know why the search had been ordered, and that he was
trying to figure out why the search had been ordered.  The
plaintiff told him that he feared for his life from the guards
and that the last time that he had been taken out of his cell he
had been assaulted.  He also told him that the last time that his
cell had been searched the guards had tried to take his books.
Defendant Bleich assured the plaintiff that the search would be

6

done professionally, that he would be present, and that he would make sure that the guards did not take his books.

In order to get defendant Bleich to authorize the search, defendant Buck falsely told defendant Bleich that the plaintiff had assaulted staff.  Defendant Bleich did not investigate that assertion.

During the search, defendant Santoro threw the plaintiff's pictures in the air like confetti.  They landed all over the cell with some of them landing in the toilet and sink.  He also threw the plaintiff's legal papers in the air.  Luckily, none of those went in the toilet or sink.  Defendant Whitman threw the plaintiff's Qur'an and other religious materials on the floor. When defendant Fitzgerald tried to take books from the cell, the plaintiff unsuccessfully tried to block him from doing so. Although defendant Bleich had stated that he would be present during the search, he was not.

The cell search was done under false pretenses.  Defendant Buck initially gave one reason for searching the cell — to confiscate any bottles and cups from the plaintiff after he had threatened to throw urine and feces.  After no containers were

7

found in the plaintiff's possession, he gave a different reason — the plaintiff's assaults on staff.  But, according to the plaintiff, there was no reason at all to search his cell.  The plaintiff claims that his cell was searched as retaliation for his protesting the search of the other prisoner's cell and for his filing of grievances and complaints.

The plaintiff did not receive a confiscation slip for the books taken from his cell.  Defendants Fitzgerald and Mosier did not give him a chance to challenge the confiscation of his books before the books were destroyed.

After the plaintiff's cell was searched and while the plaintiff's hands were still handcuffed behind his back, for no apparent reason defendant Young attempted to force the plaintiff to the floor.  Defendants Santoro and Headman jumped on and tackled the plaintiff to the floor.  Defendant Santoro punched and elbowed the plaintiff in the face numerous times while telling him to "sign off the paperwork."  After the plaintiff responded "no!", defendant Santoro choked him and punched him six more times.  Although the plaintiff was not resisting, defendant Young pulled on the tether attached to the handcuffs and said "stop resisting," and defendant Headman kneed the plaintiff in

8

the side and back while screaming for the plaintiff to stop resisting.  Defendants Whitman and Fitzgerald held the plaintiff's feet while he was being assaulted, and defendant Amos watched the entire time.  A white bag was placed over the plaintiff's head by either defendant Bleich or defendant Buck, and the plaintiff was taken into a dayroom to see a nurse and then to the medical department.  The plaintiff's left orbital bone had been fractured.  He also suffered lacerations to his knees and lower lip.

The entire incident was recorded by a video camera.

On April 4, 2012, defendant Pieczynski informed defendants Santoro, Headman, and Young that the plaintiff told medical staff that they had assaulted him.  After defendant Pieczynski told them what the plaintiff had said, defendants Santo and Headman filed false misconduct reports against the plaintiff.  Defendant Pieczynski helped them cover up their actions by filing false injury reports claiming that the plaintiff had assaulted them.

Grievances and Misconducts Arising from the April 4, 2011
Incident.

The plaintiff filed a grievance about the assault.
Defendant Pall denied that grievance stating that the use of
force was done in compliance with policy.  He stated that the
incident will not be investigated as an allegation of abuse, and
he provided the plaintiff with the address for the Pennsylvania
State Police so that the plaintiff could contact them if he
wished.

The plaintiff filed another grievance in which he claimed
that defendants Mahally, Demming, Brittian, Zakarauskas, and
Josefowicz failed to protect him from the use of force.
Defendant Gordon denied that grievance.  Defendant Barnacle also
responded to the plaintiff's complaint regarding the use of
force.  He stated that the plaintiff's allegations were
unsubstantiated.

The plaintiff also filed a grievance regarding the search
and the destruction of his property.  Defendant Mosier denied
that grievance.  Defendant Mosier responded that he had
interviewed defendant Buck and that defendant Buck stated that

the plaintiff had become belligerent about the search of the other prisoner's cell and had threatened to throw urine and feces.  According to defendant Mosier, defendant Buck then informed defendant Bleich, who authorized the search.  Defendant Mosier also responded that he had interviewed defendant Bleich and that defendant Bleich denied that he had said that he did not authorize the search and that he did not know the reason for the search.  He also denied that the plaintiff told him that the last time that his cell had been searched he had been assaulted and the guards had tried to take books.  Defendant Mosier also responded that the video of the search shows that the plaintiff attempted to block defendant Fitzgerald from exiting the cell, that he was belligerent, and that he lunged at and resisted the officers, who had to place him on the floor to gain control.

The plaintiff unsuccessfully appealed the denial of his grievances to defendant Walsh and then to defendant Varner. Defendants Buck and Bleich lied during their interviews with defendant Mosier, and defendant Mosier lied about the contents of the video.  Defendants Mosier, Pall, Walsh, Varner, and Barnacle tried to cover up the assault and the cell search.

Defendants Young, Amos, Whitman, Fitzgerald, Buck, and Bleich filed fabricated reports to cover up the assault.

11

Defendants Santoro and Headman issued the plaintiff misconduct reports charging him with assault, and defendant Buck filed a misconduct report charging him with making threats and refusing an order.  These defendants have a history of filing false and retaliatory misconducts against prisoners in the RHU to justify their actions, to attempt to protect themselves from the prisoners' grievances, and in retaliation for grievances.

Defendant McKeown found the plaintiff guilty of the misconduct reports issued by defendants Santoro, Headman, and Buck and sanctioned him to time in the RHU.  He also assessed his account for all costs incurred (apparently the medical costs of treating the defendants' purported injuries) even though the defendants were not in fact injured.  Without a penological reason, defendant McKeown refused to allow the plaintiff to call witnesses, and he refused to accept the plaintiff's written statement.  Despite the video that showed the opposite of what the defendants had written in their reports, defendant McKeown relied solely on the defendants' false reports.  His decision was not supported by sufficient facts, and he found the plaintiff guilty because the plaintiff chose to remain silent.  He failed to provide an adequate written statement of the evidence relied upon and the reasons for the discipline imposed.

Defendants Gordon, Demming, Walsh, and MacIntyre denied the plaintiff's appeals but they did not address the issues he raised.

The plaintiff claims that the assault and the subsequent misconduct reports were retaliation for his grievances and complaints.

Conditions in the RHU.

As a result of being found guilty of misconduct, the plaintiff was housed in the RHU.

In the RHU, the plaintiff is subjected to bright lights for seventeen and one half hours a day, whereas in the general population he had control of the lights in his cell.  In the RHU, the plaintiff is allowed only three, ten-minute showers a week, whereas in the general population he could shower seven days a week with no time limit.

In the RHU, the plaintiff is allowed to use the law library only once a week for two hours at a time, whereas in the general population he could use the law library three times a week for

two hours at a time.  In the RHU law library, the legal books are torn apart and pages are missing, whereas in the general population the books are adequate.

In the RHU, the plaintiff is allowed one hour of outside recreation up to five times a week, whereas in the general population he was allowed yard seven days a week for two hours at a time.  In the RHU, he is served cold and dirty meal trays and he has only five minutes to eat his meals, whereas in the general population he received hot meals on clean trays and he had fifteen minutes to eat his food.  In the RHU, he has been denied meal trays on numerous occasions, and he has lost weight.  At one point, he missed nine consecutive meals.

In the RHU, the plaintiff is denied dental and medical appointments and daily prescribed medications, whereas in the general population inmates receive adequate medical and dental care including sick call services, medications, examinations, and treatments.

Inmates in the RHU throw urine and feces in the air vents, in the exercise cages, in the showers, and on one another. Defendants Mosier and Buck placed an inmate, who is psychotic, has HIV, and is known for throwing urine and feces on others, in

the cell in the RHU next to the plaintiff's cell and in the exercise cage next to the plaintiff.

Inmates in the RHU flood the tier with water that contains feces, and that flood water flowed into the plaintiff's cell.   In the RHU, inmates bang and kick their cell doors, windows, beds, and other items all day and night, and they continuously scream.

In the RHU, guards call the plaintiff a sexual predator, a rapist, a child molester, and a killer.

The plaintiff also alleges that in the RHU he was subjected to bag lunches, no water, no showers, no yard, no law library, no shaving, no clothes, no mattress, no sheets, and no blankets.

He has been subjected to these conditions for more than two years, and he will be subject to them for the next five years. The defendants knew of the conditions in the RHU and knew that the conditions would present a substantial risk of harm to the plaintiff.

The plaintiff is seeking compensatory and punitive damages as well as declaratory and injunctive relief.

On December 16, 2011, the defendants filed a motion to dismiss the amended complaint and a brief in support of that motion.  The plaintiff filed a brief in opposition to the defendants' motion to dismiss.

II. Motion to Dismiss Standard.

A motion to dismiss a complaint for failure to state a claim upon which relief can be granted brought pursuant to Fed.R.Civ.P. 12(b)(6) challenges the legal sufficiency of the plaintiff's complaint.  In deciding a motion to dismiss the complaint, we must accept all well-pleaded factual allegations as true, "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *McTernan v. City of York,* 564 F.3d 636, 646 (3d Cir. 2009)(quoting *Phillips v. County of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008)).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009).  The statement required by Rule 8(a)(2)

must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  Detailed factual allegations are not required. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  But more is required than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Id.* "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 211 (3d Cir. 2009).  "A complaint has to "show" such an entitlement with its facts." *Id.*  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft, supra,* 129 S.Ct. at 1950.  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft, supra,* 129 S.Ct. at 1949 (quoting *Twombly, supra,* 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability

17

requirement,' but it asks for more than a sheer possibility that
a defendant has acted unlawfully." *Id.* But "a complaint need not
pin plaintiff's claim for relief to a precise legal theory."
*Skinner v. Switzer,* 131 S.Ct. 1289, 1296 (2011). Rule 8(a)(2)
"requires only a plausible 'short and plain' statement of the
plaintiff's claim, not an exposition of his legal argument." *Id.*
The factual detail necessary to satisfy the standard will vary
depending on the case. *In re Insurance Brokerage Antitrust
Litigation,* 618 F.3d 300, 320 n.18 (3d Cir. 2010).

A complaint filed by a *pro se* litigant is to be liberally
construed and "'however inartfully pleaded, must be held to less
stringent standards than formal pleadings drafted by lawyers.'"
*Erickson, supra,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429
U.S. 97, 106 (1976)). The court should consider the facts
pleaded by the *pro se* prisoner and, without strict limitation to
constitutional theories or causes of action stated by the
plaintiff, should consider the range of plausible constitutional
theories and causes of actions that could be involved in the case
given the plaintiff's factual averments. *See Holley v. Department
of Veteran Affairs*, 165 F.3d 244, 248 (3d Cir. 1999)("We apply
the applicable law, irrespective of whether a pro se litigant has
mentioned it by name.").

III.  Discussion.

The court will discuss each of the claims that the defendants are seeking to have dismissed.

A. Fourth Amendment.

The plaintiff's Fourth Amendment claims against the defendants arise from the search of his cell.  The defendants argue that the plaintiff does not have a reasonable expectation of privacy in his cell and that, therefore, the Fourth Amendment claims must be dismissed.

In *Hudson v. Palmer*, 468 U.S. 517, 526 (1984), the Supreme Court held that the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell.  Thus, the plaintiff's Fourth Amendment claims fail as a matter of law, and it will be recommended that those claims be dismissed.

B. Due Process-Confiscation of Books.

The plaintiff claims that defendants Fitzgerald and Mosier violated his due process rights by confiscating books from him without providing a confiscation slip and by not giving him a chance to challenge the confiscation before the books were destroyed.  The defendants argue that the claim fails because the plaintiff had an adequate post-deprivation remedy.

The Department of Corrections Procedures Manual relating to contraband provides that contraband will be destroyed only after either the inmate's misconduct hearing is held and the misconduct appeal process is exhausted or, when an inmate files a grievance regarding confiscated property, after the appeal process has been exhausted. DC-ADM 815 Procedures Manual, Section 3.C.8.  Contrary to this policy, the plaintiff alleges that he was not given an opportunity to challenge the confiscation of his books before they were destroyed.  Thus, the plaintiff is alleging that the destruction was unauthorized.

"'[A]n unauthorized intentional deprivation of property' by prison officials does not violate the Due Process Clause 'if a meaningful postdeprivation remedy for the loss is available.'" *Monroe v. Beard,* 536 F.3d 198, 210 (3d Cir. 2008)(quoting *Hudson*

*v. Palmer*, 468 U.S. 517, 533 (1984)). "Pre-deprivation notice is not constitutionally required." *Id*.

The Pennsylvania Department of Corrections (DOC) grievance procedure provides an adequate post-deprivation remedy. *See Tillman v. Lebanon County Corr. Fac.*, 221 F.3d 410, 422 (3d. Cir. 2000). The existence of a post-deprivation remedy forecloses any due process claim. *Austin v. Lehman*, 893 F. Supp. 448, 454 (E.D. Pa. 1995).

The plaintiff alleges that he availed himself of the DOC grievance procedure. He was dissatisfied with the result. But due process is satisfied even if the inmate is dissatisfied with the result of the process. *Iseley v. Horn*, 1996 WL 510090 *6 (E.D. Pa. Sept. 3, 1996).

It will be recommended that the motion to dismiss the due process claim against defendants Fitzgerald and Mosier based on the confiscation and destruction of books be granted.

C. Due Process-Grievance Process.

The plaintiff alleges due process violations against defendants Bleich, Mosier, Gordon, Pall, Barnacle, Walsh, and

Varner for their part in the grievance and appeal process in which the plaintiff was not successful.  The defendants argue that these claims fail because the plaintiff does not have a constitutional right to a grievance system.

As a general rule, inmates do not have a constitutional right to a prison grievance system. *See Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 137-138 (1977); *Speight v. Sims*, 283 Fed. Appx. 880 (3d. Cir. 2008) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.").  Consequently, dissatisfaction with prison officials' responses to an inmate's grievances does not support a constitutional claim. *See also Alexander v. Gennarini,* 144 Fed. Appx. 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); *Pryor-El v. Kelly,* 892 F.Supp. 261, 275 (D.D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).  And a mere failure to investigate a prisoner's grievance does not state a claim upon which relief can be granted. *Simonton v. Tennis,* 437 Fed.Appx. 60, 62 (3d Cir. 2011)("A bare allegation of 'rubber stamping' does not suffice to establish a cognizable constitutional violation.").

22

The plaintiff's due process claims against certain defendants based upon the administrative remedies that he filed are not claims upon which relief can be granted.  Even though the plaintiff alleges that defendants Bleich and Mosier provided false testimony during the investigation of his grievances and that defendants Gordon, Pall, Barnacle, Walsh and Varner wrongly denied his grievances and the appeals, there is not a cognizable constitutional claim.  It will be recommended that the motion to dismiss the plaintiff's due process claims against defendants Bleich, Mosier, Gordon, Pall, Barnacle, Walsh, and Varner based on the grievance process be granted.

### D. Retaliation.

The plaintiff claims that the cell search and the assault were in retaliation for his legal actions.  He also claims that the defendants issued him numerous misconducts in retaliation for his legal actions.  The defendants argue that the plaintiff's retaliation claims fail because he does not allege facts that show retaliation for engaging in protected conduct.

A prisoner claiming that a defendant has retaliated against him for exercising his constitutional rights must allege facts

that raise a reasonable inference that: 1) his conduct was constitutionally protected; 2) he suffered "adverse action" at the hands of the defendant; and 3) his constitutionally protected conduct was a substantial or motivating factor in the decision of the defendant. *Carter v. McGrady,* 292 F.3d 152, 158 (3d Cir. 2002).

Grievances against prison officials are protected activity for purposes of a retaliation claim. *See Milhouse v. Carlson*, 652 F.2d 371, 373-74 (3d Cir. 1981).  Here, the Plaintiff alleges that he filed numerous grievances and private criminal complaints to outside agencies, so he alleges that he engaged in protected conduct.

The plaintiff identifies the adverse action to which he was subjected as the cell search, the assault, and the misconducts.

The third element of a retaliation claim is that the protected activity was a substantially motivating factor in the adverse action taken.  A substantially motivating factor may be shown with evidence of a chronology of events from which retaliation may be plausibly inferred. *Tighe v. Wall*, 100 F.3d 41, 41 (5th Cir. 1996).

As to the cell search, the plaintiff's grounds for such an inference are that specific reasons or causes for a cell search were not present, that the search followed his filing of grievances and complaints and his protesting the search of another inmate's cell, and that defendants Santoro, Fitzgerald, and Young told him that they could not wait for this day and that he had brought this on himself.  Construing the amended complaint in the light most favorable to the plaintiff, as we must when deciding a motion to dismiss, we conclude that the plaintiff has alleged facts from which it can reasonably be inferred that his legal activities were a substantially motivating factor in the decision to search his cell.  So, the amended complaint states a retaliation claim upon which relief may be granted based on the cell search.

Similarly, we conclude that the amended complaint states a retaliation claim upon which relief may be granted based on the assault.  The assault immediately followed the cell search and the plaintiff alleges that he was not resisting the officers.  Thus, as with the search, the plaintiff's allegations raise a reasonable inference that his legal activities were a substantially motivating factor in the decision to assault him.

The plaintiff also claims that numerous misconducts issued to him both before and after the assault were in retaliation for

25

his legal activities.  He alleges that the defendants had a
pattern or filing misconducts after inmates file grievances.
Given this and given that the misconducts followed the
plaintiff's filing of grievances and complaints against some of
the defendants, the amended complaint states a retaliation claim
upon which relief may be granted as to the misconducts.


      E.   Eighth Amendment-Failure-to-Protect Claim.


    The plaintiff claims that the defendants who assaulted him
violated his Eighth Amendment right to be free from excessive
force.  The defendants have not moved to dismiss that claim.  Nor
have they moved to dismiss the Eighth Amendment claim against the
officers who witnessed the alleged assault but failed to
intervene.  They have, however, moved to dismiss the Eighth
Amendment failure-to-protect claim against the defendants who did
not directly participate in or witness the assault.  The
defendants argue that that claim fails because the plaintiff does
not allege facts that show that they had actual knowledge of a
serious risk of harm.


    Prison officials have a duty to protect prisoners from
violence at the hands of others. *Farmer v. Brennan,* 511 U.S. 825,
833 (1994).  They may be liable for failing to protect an inmate

from the use of excessive force if they are deliberately
indifferent to a substantial risk of serious harm to the inmate.
*Id*. at 834.   To plead an Eighth Amendment failure to protect
claim, a plaintiff must plead facts raising a reasonable
inference of (1) a substantial risk of serious harm; (2) the
defendants' deliberate indifference to that risk; and (3)
causation. *See Hamilton v. Leavy,* 117 F.3d 742, 747 (3d Cir.
1997).

The plaintiff alleges that, in January of 2011, defendant
Headman assaulted him, and defendant Santoro threatened his life.
He also alleges that he filed numerous request slips, grievances,
and private criminal complaints stating that he feared for his
life because the guards and nurses in the RHU had made threats
against his life.   His requests for separations from certain
staff members were denied.   He alleges that defendants Gordon,
Mahally, Demming, Brittian, Zakarauskas, Josefowicz, Pall,
Barnacle, and Walsh knew that he was having serious problems with
staff members and that he feared for his life.   They,
nevertheless, took no action.

These allegations are sufficient to raise a reasonable
inference that the defendants were deliberately indifferent to a
substantial risk of serious harm to the plaintiff.   Accordingly,

the amended complaint states a failure-to-protect claim upon which relief can be granted.


       F. Due Process-Misconducts and Disciplinary Custody.


The plaintiff claims that he was denied due process in connection with the disciplinary hearings on the misconducts issued to him.


The Fourteenth Amendment provides that a state shall not "deprive any person of life, liberty, or property, without due process of law."  A due process claim requires a two-part analysis.  First, the court must determine whether the interest asserted by the plaintiff is within the scope of protection of life, liberty, or property found in the Due Process Clause. *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000).  Second, if the interest is one that is protected by the Due Process Clause, "the question then becomes what process is due to protect it." *Id.*


In *Sandin v. Conner*, 515 U.S. 472 (1995), the United States Supreme Court, addressing the question of when the state can

create liberty interests protected by the Due Process Clause,
held that:

> States may under certain circumstances create liberty
> interests which are protected by the Due Process
> Clause.  But these interests will be generally limited
> to freedom from restraint which, while not exceeding
> the sentence in such an unexpected manner as to give
> rise to protection by the Due Process Clause of its own
> force, nonetheless imposes atypical and significant
> hardship on the inmate in relation to the ordinary
> incidents of prison life.

*Id.* at 483-84.

In *Sandin*, the inmate was sentenced to thirty days of
disciplinary confinement in the Special Holding Unit.  As a
result of the prisoner's disciplinary segregation he "had to
spend his entire time alone in his cell (with the exception of 50
minutes each day on average for brief exercise and shower
periods, during which he nonetheless remained isolated from other
inmates and was constrained by leg irons and waist chains)." *Id.*
at 494 (Breyer, J. dissenting).  The Court concluded that the
inmate's thirty days in the Special Holding Unit, considered
within the context of prison confinement, did not impose the type
of atypical and significant deprivation of liberty in which the
state could be seen to have created a liberty interest. *Id.* at
486.  The Court noted that disciplinary confinement at the prison
in question, with only insignificant exceptions, mirrored
conditions imposed on inmates in administrative and protective
custody; that based on a comparison of inmates inside of and

outside of disciplinary segregation, placement in segregation for
thirty days did not work a major disruption in the inmate's
environment; that disciplinary action did not inevitably affect
the duration of the inmate's sentence; and that the "regime to
which [the inmate] was subjected was within the range of
confinement to be normally expected for one serving an
indeterminate term of 30 years to life." *Id.* at 486-87.

"After *Sandin,* it is clear that the touchstone of the
inquiry into the existence of a protected, state-created liberty
interest in avoiding restrictive conditions of confinement is not
the language of regulations regarding those conditions but the
nature of those conditions themselves 'in relation to the
ordinary incidents of prison life.'" *Wilkinson v. Austin*, 545
U.S. 209, 223 (2005)(quoting *Sandin, supra,* 515 U.S. at 484).  In
deciding whether a protected liberty interest exists under
*Sandin*, we consider the duration of the confinement and the
conditions of that confinement in relation to other prison
conditions. *Mitchell v. Horn,* 318 F.3d 523, 532 (3d Cir. 2003).
Whether or not a protected liberty interest exists under *Sandin*
requires inquiry into the specific facts of the case. *Id.* at 533.
But, "inmates are generally not entitled to procedural due
process in prison disciplinary hearings because the sanctions
resulting from those hearings do not usually affect a protected

liberty interest." *Burns v. Pennsylvania Dept. of Corrections,*
642 F.3d  163, 171 (3d Cir. 2011).


Construing the allegations in the amended complaint in the
light most favorable to the plaintiff, the plaintiff has alleged
facts from which it can reasonably be inferred that he was
subjected to atypical and significant hardships in relation to
the ordinary incidents of prison life such that he had an
interest protected by the Due Process Clause.  He alleges that he
was subject to the conditions for a lengthy period of time, i.e.
two years already and another five years going forward.  He also
alleges that he was subject to harsh conditions and to some
conditions which can be seen as atypical including the denial of
meals, the denial of medication, and his cell being flooded with
water containing feces.


Having determined that the plaintiff has sufficiently
alleged facts from which it can reasonably be inferred that he
has a liberty interest, the next question is whether he has
alleged facts from which it can reasonably be inferred that he
was denied the process that he was due.


"Prison disciplinary proceedings are not part of a criminal
prosecution, and the full panoply of rights due a defendant in
such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S.

31

539, 556 (1974).   In *Wolff,* the Supreme Court set forth what process is due a prisoner who is facing a serious institutional misconduct charge which could lead to the deprivation of a liberty interest protected by the Due Process Clause.   The Court held that due process requires that the prisoner receive at least 24 hours advance written notice of the claimed violations. *Id.* at 564.   The inmate must be allowed to call witnesses and to present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. *Id.* at 566.   Where an illiterate inmate is involved or where the complexity of the issues makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, the inmate should be allowed to seek the aid of a fellow inmate or aid in the form of help from a staff member. *Id.* at 570.   There must be a written statement of the factfinder as to the evidence relied upon and the reasons for the disciplinary action taken. *Id.* at 564.   Additionally, due process requires that there be some evidence to support the findings made in the disciplinary hearing. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).

The plaintiff alleges that he had hearings on the misconducts.   But he alleges among other things that he was not permitted to call witnesses.   And he alleges that there was no penological reason for not allowing him to call his witnesses.

32

Given these allegations, the amended complaint states a due
process claim upon which relief can be granted.


      G.   Eighth Amendment-Conditions.


The plaintiff claims that the conditions of his
confinement in RHU violated the Eighth Amendment.  The defendants
argue that the plaintiff does not plead facts sufficient to make
it plausible that the conditions of his confinement were
sufficiently serious to state a claim upon which relief can be
granted.

The unnecessary and wanton infliction of pain constitutes
cruel and unusual punishment forbidden by the Eighth Amendment.
*Whitley v. Albers*, 475 U.S. 312, 319 (1986).  Unnecessary and
wanton inflictions of pain include those that are totally without
penological justification. *Hope v. Pelzer*, 536 U.S. 730, 737
(2002).  Conditions which inflict needless suffering, whether
physical or mental, may constitute cruel and unusual punishment.
*Tillery v. Owens*, 719 F.Supp. 1256, 1275 (W.D. Pa. 1989), *aff'd*,
907 F.2d 418 (3d Cir. 1990).

An Eighth Amendment claim gives rise to a two-prong
analysis.  Eighth Amendment claims must satisfy both an objective

component (the deprivation must be sufficiently serious) and a subjective component (the defendant must have been deliberately indifferent). *Young v. Quinlan*, 960 F.2d 351, 359-60 (3d Cir. 1992).  As to the objective component, the Eighth Amendment is violated only when an inmate is deprived of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

As to the subjective component, the question is whether the prison official acted with deliberate indifference to the inmate's health or safety. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).  "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).  "We may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious." *Hope, supra,* 536 U.S. at 738.

The length of time a prisoner is subjected to harsh conditions is a critical factor in an Eighth Amendment analysis. *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996)("Conditions such as a filthy cell that may be tolerable for a few days are intolerably cruel for weeks or months."). *See also Hutto v.*

*Finney*, 437 U.S. 678, (1978)("[T]he length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards.").

In addressing an Eighth Amendment conditions-of-confinement claim, the Supreme Court has stated that the Constitution does not mandate comfortable prisons. *Wilson v. Seiter,* 501 U.S. 294, 298 (1991).  Conditions which are not cruel and unusual are not unconstitutional. *Rhodes*, *supra,* 452 U.S. at 347 (1981).  "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id*.

The plaintiff has sufficiently alleged facts from which it could reasonably be inferred that he was denied the civilized measure of life's necessities.  He alleges among other things that he was denied food and that at times he was denied water, showers, clothes, a mattress, sheets, and a blanket.  He also alleged facts from which it could reasonably be inferred that the defendants were deliberately indifferent to his health and safety.  He alleges that the defendants knew of the conditions in the RHU and knew that the conditions would present a substantial risk of harm to him.  Accordingly, we conclude that the amended complaint states an Eighth Amendment claim upon which relief can be granted.

35

H.  Eighth Amendment-Misconducts.

To the extent the amended complaint is construed as asserting an Eighth Amendment claim based on the issuance of false misconducts, we agree with the defendants that that claim should be dismissed.  The filing of false misconduct charges against an inmate does not itself qualify as an Eighth Amendment violation.  *Booth v. Pence*, 354 F. Supp.2d 553, 559 (E.D. Pa. 2005).  Thus, he plaintiff fails to state an Eighth Amendment claim based on the mere issuance of the misconducts.

I.  Fifth Amendment

The plaintiff argues that his privilege against self-incrimination was violated when his refusal to testify at his disciplinary hearings was used by the hearing examiner to find him guilty.  Because the Fifth Amendment privilege against self-incrimination does not forbid a hearing examiner from drawing an adverse inference for the failure of an inmate to testify at a hearing, *Baxter v. Palmigiano*, 425 U.S. 308 (1976), we recommend dismissal of the Fifth Amendment claim.

J.   Conspiracy


The plaintiff asserts conspiracy claims in all sections of his complaint.


In order to set forth a claim for conspiracy, the plaintiff cannot rely on conclusory allegations. *D.R. by L.R. V. Middle Bucks Area Vocational Technical School*, 972 F. 2d 1364, 1377 (3d Cir. 1992).  The Third Circuit has suggested that a claim is sufficient if the complaint outlines: 1) the conduct that violated the plaintiff's rights, 2) the time and place of the conduct, and 3) the identity of the officials responsible for the conduct. *Oatess v. Sobolevitch*, 914 F. 2d 428, 432 n. 8 (3d Cir. 1990).


The plaintiff alleges that prior to the cell search and assault, defendants Santoro, Fitzgerald, and Young told the plaintiff that they could not wait for this day and that he had brought this on himself.  He alleges that defendant Buck obtained authorization to search his cell under false pretenses.  He also alleges that, on April 4, 2012, defendant Pieczynski informed defendants Santoro, Headman, and Young that the plaintiff had told medical staff that they had assaulted him.  After defendant Pieczynski told them what the plaintiff had said, defendants Santo and Headman filed false misconduct reports against the

37

plaintiff.   Defendant Pieczynski helped them cover up their
actions by filing false injury reports claiming that the
plaintiff had assaulted them.   He also alleges that defendants
Young, Amos, Whitman, Fitzgerald, Buck, and Bleich filed
fabricated reports to cover up the assault and that defendants
Santoro, Headman, and Buck issued false misconduct reports.

   These allegations are sufficient to raise a reasonable
inference of a conspiracy.   Accordingly, we conclude that the
amended complaint states a conspiracy claim upon which relief can
be granted against defendants Santoro, Fitzgerald, Headman,
Young, Pieczynski, Amos, Whitman, Buck, and Bleich.

        K. State-Created Danger Doctrine.

   The defendants construe the amended complaint as
asserting a claim under the state-created-danger doctrine.   We
doubt that the amended complaint can reasonably be construed as
asserting such a claim.   But to the extent that the amended
complaint is construed to assert such a claim, we recommend that
that claim be dismissed because in the prison context the Eighth
Amendment provides the standard regarding the protection of a
prisoner.

IV.   Recommendations.


        Based on the foregoing, it is recommended that the
defendants' motion (doc. 19) to dismiss be granted in part and
denied in part.  It is recommended that the motion be granted as
to the plaintiff's Fourth Amendment claim, Fifth Amendment claim,
due process claim regarding the confiscation of his books, due
process claim regarding the grievance process, Eighth Amendment
claim regarding the issuance of false misconducts, and the state-
created-danger claim.  It is recommended that the motion
otherwise be denied and that the case be remanded to the
undersigned for further proceedings.



                                         _/s/ J. Andrew Smyser_
                                         J. Andrew Smyser
                                         Magistrate Judge




Dated:  May 14, 2012.